UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD MCADOO,            CASE NO.: 8:16-CV-1917-JDW-AEP
DONALD WILLIAMS and
SCHILAX LOUIS,

    Plaintiffs,

vs.

NEW LINE TRANSPORT, LLC, and
CEMEX, INC.,

    Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND COMPEL ARBITRATION**

Plaintiffs EDWARD MCADOO ("McAdoo" or "Plaintiff"), DONALD WILLIAMS ("Williams" or "Plaintiff"), and SCHILAX LOUIS ("Louis" or "Plaintiff"), by and through the undersigned attorney, hereby respond to Defendants NEW LINE TRANSPORT, LLC'S ("New Line" or "Defendant") and CEMEX, INC. ("CEMEX" or "Defendant") Motion to Dismiss Plaintiffs' Amended Complaint and Compel Arbitration and state as follows:

<u>Relevant Facts</u>

Plaintiff McAdoo and Plaintiff Williams worked as W-2 CEMEX drivers at the Hillsborough County CEMEX facility. New Line is a Florida corporation owned by CEMEX, has many of the same officers as CEMEX and has as its principal place of business, CEMEX' address in Hillsborough County Florida.

In or around November of 2012, CEMEX held a meeting with most of its Hillsborough County Florida location drivers. CEMEX told the drivers that they would no longer be

CEMEX employees but would become independent drivers for its subsidiary company New Line. CEMEX then had the drivers walk down a hall to another room to complete documents to become New Line drivers. CEMEX and New Line attempted to change the drivers' status from W-2 employees to independent contractors. In its attempt, they had the drivers sign purchase agreements for CEMEX/ New Line trucks and sign owner operator agreements. Although the drivers signed purchase agreements with New Line and although New Line deducted payments from the drivers' paychecks, New Line never actually sold any of its trucks to the drivers. The agreements were instead sham purchase agreements. New Line maintained ownership, moved drivers from truck to truck (this could not be done if the drivers owned the truck), registered all the trucks in New Line's business name, maintained the trucks, did not allow the drivers to use the trucks for any driving except CEMEX/New Line deliveries and did not allow the drivers to bring "their" trucks home with them. When a driver was fired or left CEMEX/New Line, New Line kept the driver's truck and kept all payments made by the drivers. The "purchase" agreements were not actual purchase agreements and were a sham in order to fraudulently identify drivers as owner/operators. New Line, at the same time had the drivers execute sham owner/ operator agreements despite the fact that CEMEX and New Line knew the drivers were not "owners" and despite knowing that the owner/operator agreement too was a sham agreement to fraudulently avoid calling its drivers employees for FLSA purposes. Plaintiffs were never given the opportunity to question the new contracts or to request changes to the new contracts. Instead they were told that if they wanted to keep their jobs, they had to sign the contracts "as is". It was a take it or leave it situation. Following this November 2012 transition, Plaintiff Louis transferred to the CEMEX facility where McAdoo and Williams worked and was supervised by CEMEX supervisors.

Following this move from being called New Line drivers, the drivers did the same job as before, reported to the same CEMEX supervisors and dispatchers as before, worked in the same facility as before and, as before, never had any ownership rights or interests in the trucks assigned to them.

After Plaintiff McAdoo, Plaintiff Williams and Plaintiff Louis were fired, New Line kept possession of the trucks Plaintiffs had supposedly purchased and kept all payments made by Plaintiffs for such purchases.

Arbitration Clause

Paragraph 29 of the owner operator agreement sets forth what claims are to be subject to arbitration should the arbitration clause be found to be otherwise enforceable. It states; "Any dispute arising out of or relating to this agreement, including but not limited, any personal injury or property damage claims, any allegations of breach thereof or any violation of any governmental regulation cited herein shall be fully and finally resolved by arbitration." It is clear from the Complaint (and proposed Amended Complaint) that the claim is not based on and did not arise out of the agreement. The complaints all do not concern personal injury, do not concern "property damages", do not involve any allegation of a breach of the agreement and do not involve any allegations of a "violation of any governmental regulation cited" in the agreement. By spelling out what is covered, the omission of anything closely resembling the type of claim brought in this action clearly demonstrates that the instant claim is not one meant to be subject to arbitration under the Agreement. (See *Patricoff v. Home Team Pest Defense, LLC,* 2006 WL 890094 at 1(MD Fla 2006.))

The Agreement goes on to state that consolidated cases, if allowed, make the arbitration provisions null and void.

The arbitration provision finally states New Line, may at its will, decide to forgo arbitration for recovery of money or property damage from the drivers. (It is silent as to whether the drivers can likewise forgo arbitration for claims involving money or property damages.)

## Argument

In ruling on a motion to compel arbitration, courts consider three factors: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. *Florida Farm Bureau Ins. Cos. V. Pulte Home Corp., Inc.,* No. 8:04-cv-2357-T-EAJ, 2005 WL 1345779, at *3 (M.D. Fla. June 6, 2005). Thus, the Court must examine whether a valid agreement to arbitrate exists here and, if so, whether the particular dispute at issue – the payment of overtime compensation-was intended to be subject to arbitration.

    a.  *Whether a valid agreement to arbitrate the dispute exists*

The Arbitration provision in the Agreement is invalid and unenforceable because it is unconscionable. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et. seq*., permits a challenge to the validity of an arbitration provision based on a state contract defense, such as unconscionability. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996). Whether an arbitration provision is unconscionable is a question of state law and therefore the provision is interpreted according to state law rules of contract construction. *Dale v. Comcast Corp.,* 498 F.3d 1216, 1219 (11th Cir. 2007). Florida law recognizes both procedural and substantive unconscionability; the party seeking to void the arbitration provision bears the burden of establishing both, but they need not be present to the same degree. *Basulto v. Hialeah Auto.,* 141 So. 3d 1145, 1158-59 (Fla. Mar. 20, 2014); *Dorward,* 2011 WL 2893118, at *4 (citing *Murphy v.*

4

*Courtesy Ford LLC.,* 944 So.2d 1131, 1134 (Fla. 3d DCA 2006)). When determining whether a contract is both procedurally and substantively unconscionable, the Court must look to the contract itself and any facts surrounding its making. *Murphy,* 944 So.2d at 1134.

      b. *Procedural unconscionability*

Courts must consider the following four factors in determining whether a contract is procedurally unconscionable under Florida law:

> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented in a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

*Dorward*, 2011 WL 2893118, at *5 (citing Pendergest v. Sprint Nextel Corp., 592 F.3d 1119, 1135 (11th Cir. 2010)).

Looking at each factor in turn, it is clear that Plaintiffs have demonstrated the procedural unconscionability standard: 1) The manner in which the contract was entered into: CEMEX told its Hillsborough County drivers, who had been W-2 employees of CEMEX, that they were no longer CEMEX employees but that they would still drive for CEMEX under CEMEX' subsidiary company, New Line. CEMEX then marched the drivers down the hall, and, in essence, told them they had to sign all of the New Line documents or face dismissal. Each was then given a sham purchase agreement. CEMEX and New Line knew the agreement was a sham as neither took any steps to actually effectuate any change in ownership of the trucks supposedly sold to the drivers. The Owner Operator agreements were in turn based on this sham change of ownership that never occurred. While "Sale and Agreement to Enter Into Owner Operator Agreements" were executed, neither New Line nor CEMEX ever actually conveyed ownership of the trucks to Plaintiffs as required. The sole purpose of the agreements was to misrepresent the employment status of the

5

various drivers and to misclassify drivers as contractors rather than the employees they actually were. 2) The relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into. CEMEX and New Line had 100% of the bargaining power and issued an ultimatum that the drivers, many of who had been CEMEX drivers for years, either had to sign the sham agreements or be fired. This was a far cry from the facts presented in *Robinson v. Anytime Rentals, Inc.*, 2:14-cv-528 (MD Fla 2014) where employees sought new employment at Anytime and could just as easily have obtained employment elsewhere. The case at hand involves long standing employees who faced being fired from their jobs. 3) Whether the terms were merely presented in a "take-it-or-leave-it" basis. This was exactly how the terms were presented. The drivers were told they could either sign or pack up and leave. And 4) The complaining party's ability and opportunity to understand the disputed terms of the contract. On its face, the contract states that it applies to "dispute arising out of "the agreement" including but not limited"; 1) personal injury claims 2) property damage claims 3) breach of contract claims and 4) claims for violation of governmental regulations cited in the agreement. A driver reading the list of claims addressed would ordinarily take the agreement to mean just what it said.  As there was no mention of 1981 or the FLSA, it is natural that the driver would not consider those claims as part of the agreement. This adversely affects the drivers' ability and opportunity to understand that the agreement may be as all-encompassing as Defendant now asserts.

    c.  *Substantive unconscionability*

Substantive unconscionability focuses on the agreement itself and whether the terms of the agreement are unreasonable and unfair. *Powertel, Inc. v. Bexeley,* 743 So.2d 570, 574 (Fla. 1st DCA 1999). "Substantive unconscionability … requires assessment of the contract's terms to determine whether they are so outrageously unfair as to shock the judicial conscience." *FI-Tampa,*

*LLC v. Kelly-Hall,* 135 So.3d 563, 567 (Fla. 2d DCA 2014) (quotation marks omitted). To determine substantive unconscionability, courts consider "whether the disputed terms limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to the arbitration of disputes." *EEOC v. Taco Bell of Am., Inc.,* No.: 8:06-cv-1792-T-30MAP, 2007 WL 809660, at *1 (M.D. Fla. March 15, 2007) (citing *Palm Beach Motor Cars Ltd., Inc. v. Jeffries,* 885 So.2d 990, 992 (Fla. 4th DCA 2004)).

Here, looking at the factors, it is clear that substantive unconscionability has been met. Here the agreement limits available remedies, imposes substantial costs and, most importantly "lacks mutuality of obligation with respect to the arbitration of disputes". *Id*. at *1. 1) In refusing a split of arbitration costs without the ability to nullify the split, the clause limits Plaintiff's substantive remedies under the FLSA and under 42 USC 1981. 2) Plaintiffs have both asserted that the cost of arbitration would limit or eliminate their ability to redress their rights under the FLSA and under 42 USC 1981 and 3) New Line actually makes it so that, while binding the drivers to arbitration, New Line gets to decide, at its sole discretion, whether to proceed under arbitration or in court when it seeks many damages or property damage claims against the drivers. Requiring the drivers to proceed only in arbitration while allowing New Line to choose is textbook lack of mutuality of obligation with respect to arbitration of disputes.

The court must next determine whether the claims raised by Plaintiff are within the scope of the arbitration provision. *Florida Farm Bureau Ins. Cos.,* 2005 WL 1345779, at *3. Even though there is that presumption in favor of arbitration, "[t]he courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Goldberg v. Bear, Stearns & Co.,* 912 F.2d 1418, 1419-20 (11th Cir. 1990). That means, "the parties will not be required to arbitrate when they have not agreed to do so." *Id.* at 1419; *see*

*also Waffle House,* 534 U.S. at 294, 122 S.Ct. at 764 ("Arbitration under the FAA is a matter of consent, not coercion."; *Lawson v. Life of the South Ins. Co.,* 648 F.3d 1166, 1170-71 (11th Cir. 2011).

Plaintiffs never agreed to arbitrate claims for breach of federal employment laws or any laws relating to the payment of proper overtime wages. Rather, the arbitration provision drafted entirely by the Defendant purports to cover only "any controversy or claim which arises out of or relates to **this agreement**, or the alleged breach of **this agreement**." Unlike *Robinson*, 2:14-cv-528, the agreement goes on to state what claims are included. By its plain terms, this claim does not arise out of the agreement of the breach of the agreement. Defendants do not claim that Defendant violated the agreement, but rather that Defendant violated the Fair Labor Standards Act ("FLSA"), and 42 USC 1981 laws not addressed in the agreement. Nor does the agreement to arbitrate purport to govern any and all controversies arising out of the employment relationship. In fact, the agreement specifically lists the type of claims subject to arbitration; (1) personal injury claims; (2) property damage claims; (3) breach of contract claims and claims "involving violations of any governmental regulations cited" in the Agreement. Not mentioned is any dispute as to the compensation, overtime or claims under 1982, the provision likewise does not cover the claim under the Fair Labor Standards Act, and Defendant's Motion should be denied. *See Lambert*, 544 F.3d at 1195 (citing 9 U.S.C. §§ 2-4).

Whether the arbitration clause at issue encompasses Plaintiff's claims is not an issue of first impression. Rather, other courts have construed even broader language than that at issue here and held that claims outside the scope of the agreement were not subject to arbitration. *See, e.g., Patricoff v. Home Team Pest Defense, LLC,* 2006 WL 890094 at *1 (M.D. Fla. April 3, 2006).

In *Patricoff v. Home Team Pest Defense, LLC*, 2006 WL 890094, at *1 (M.D. Fla. April 3, 2006), the Court construed even broader language and held that FLSA claims fell outside the scope of the agreement and were not subject to arbitration. The plaintiff in *Patricoff* signed an agreement to abide by employer's policy to arbitrate employment-related disputes – not only contract-related disputes as stated in the agreement at issue here. The policy contemplated resolving "work-related discrimination and harassment claims," including termination-related "retaliation or constructive discharge claims" as well as "employment-related tort claims." *Id.* The arbitration policy listed as examples of two federal statutes, but not the FLSA. *Id.* Because the parties' agreement to arbitrate did not expressly include FLSA claims, the *Patricoff* court held that the plaintiff's FLSA claims fell outside the arbitration agreement and were not subject to arbitration. *Id.* at fn. 4 (quoting *Multi-Financial Sec. Corp. v. King*, 386 F.3d 1364, 1367 (11th Cir. 2004) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.")

Similar to *Patricoff*, here the contract defines the claims subject to arbitration as those "arising out of" or "related to" the contract and lists there types of claims encompassed, terms which have both been interpreted by the Eleventh Circuit. Discussing each of these terms, the Eleventh Circuit has explained:

> The term "arising out of" is broad, but it is not all encompassing. In construing that same term to determine whether a dispute arises out of a contract, we have explained that the focus is on "whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties…"
>
> Similarly, "related to" marks a boundary by indicating some direct relationship; otherwise, the term would stretch to the horizon and beyond. As the Supreme Court has explained in the ERISA pre-exemption context, "related to" is limiting language and "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy," it would have no limiting purpose because "really, universally relations stop nowhere."

9

*Dow v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218-19 (11th Cir. 2011).

Applying the Eleventh Circuit's binding interpretation, the arbitration clause cannot be read to apply Defendant's FLSA claim and 1981 claims, because it is not dependent upon the contract, just like the tort claim at issue in *Siefert v. U.S. Home Corp.*, 750 So.2d 633 (Fla. 1999), was not based on the parties' agreement. For this reason alone, Defendant's Motion must be denied.

When deciding whether the parties have agreed to arbitrate certain matters, courts apply state law principles of contract formation. *Am. Exp. Fin. Advisors, Inc. v. Makarewicz,* 122 F.3d 936, 940 (11th Cir. 1997). As noted, Florida law applies here, because the contract was formed in the state of Florida and states it is governed by Florida law.

Under Florida law, "when an arbitration clause has provisions that defeat the remedial purpose of the statute, the arbitration clause is not enforceable. *Hernandez v. Colonial Groceries, Inc.*, 124 So.2d 408, 410 (Fla. 2d DCA 2013) (reviewing order compelling arbitration based on a prevailing party attorney fee provision in any FLSA case. The court reasoned that because the FLSA mandates a fee award for prevailing plaintiffs but not prevailing defendants, the fee splitting could have a chilling effect on a person seeking redress of rights under the FLSA).

d. *Whether claims against Defendant CEMEX are subject* to *Arbitration*

Despite not being a signatory to the owner operator agreement, CEMEX attempts to seek the benefits of such agreement under a theory of equitable estoppel. In doing so, CEMEX never addresses the complaint's allegations that the agreement was entered into for the purpose of fraudulently defining the drivers as owner operators while never conveying ownership of the trucks each driver operated. This fraud was clearly for the purpose of evading CEMEX's obligations under the FLSA.

Although CEMEX does not address such allegations, it nonetheless seeks the benefit of the arbitration agreement under a theory of equitable estoppel. It is clear that in determining the enforceability of an arbitration clause, state law governs. *Delano v. Mastec, Inc.*, 2010 WL 4809081 at 2 (M.D. Fla. 2010). Florida law is clear that no party may seek equity with unclean hands. Unclean hands in this case equates to "sneaky and deceitful" conduct that a party seeks to use to its benefit. *Hensel v. Aurilio*, 417 So.2d 1035, 1038 (Fla. 4th DCA 1982). Unclean hands "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Cong Office Park Condos II, LLC v. First Citizens Bank & Trust Co.*, 105 So.3d 602, 609 (Fla. DCA 2013), *City Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co.*, 324 806, 814 (1945).

Here, the complaint plainly alleges fraudulent behavior that would preclude equitable relief, yet CEMEX fails to even address such behavior in its Motion to Compel Arbitration (through an equitable estoppel theory), CEMEX's motion should therefore be denied by this Court.

In addition, the complaint clearly states that CEMEX is the actual employer and the New Line agreements were created for the purpose of fraudulently claiming CEMEX was not an employer for FLSA purpose. Should Plaintiffs prevail on this issue, that would basically nullify the effects of the owner operator agreement signed by New Line. This would nullify the arbitration portions of the agreement along with the rest of this agreement and would eliminate any grounds for either party to compel arbitration.

CEMEX's motion should therefore be denied.

**CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss Plaintiffs' Amended Complaint and Compel Arbitration.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the CM/ECF filing system to: Laura E. Prather, (laura.prather@jacksonlewis.com), and Andrew Lincoln (andrew.lincoln@jacksonlewis.com), Jackson Lewis P.C., 100 S. Ashley Drive, Suite 2200, Tampa, FL, 33602, on this 5th day of December, 2016.

Respectfully Submitted,

 */s/* James M. Thompson
JAMES M. THOMPSON, ESQ.
Florida Bar No.: 0861080
jmthompsonlegal@gmail.com
KATHRYN C. HOPKINSON, ESQ.
Florida Bar No.: 0102666
khthompsonlegal@gmail.com
THOMPSON LEGAL CENTER, LLC.
777 S. Harbour Island Blvd., Suite 245
Tampa, Florida 33602
(813) 769-3900 • (813) 425-3999 Fax
Counselors for the Plaintiffs