UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD MCADOO,
DONALD WILLIAMS, and
SHILAX LOUIS,

      Plaintiffs,

v.                                     Case No: 8:16-cv-1917-T-27AEP

NEW LINE TRANSPORT, LLC, and
CEMEX, INC.,

      Defendants.

_____/

## ORDER

**BEFORE THE COURT** is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint

and Compel Arbitration, opposed by Plaintiffs (Dkts. 19, 23). Defendants' motion is **GRANTED**.

## I.    BACKGROUND

Plaintiffs and Defendant New Line Transport, LLC are signatories to respective contracts

entitled "Sale and Agreement to Enter into Owner Operator Agreement" and "Owner Operator

Agreement." (Dkts. 19-1 to 19-6).  The owner operator agreement for each Plaintiff provides:

> Any dispute arising out of or relating to this Agreement, including but not limited
> [sic], any personal injury or property damage claim, any allegation of breach thereof
> or any alleged violation of any governmental regulation cited herein, shall be fully
> and finally resolved by arbitration in accordance with the commercial arbitration
> rules of the American Arbitration Association ("AAA"). . . . This Agreement shall
> be deemed to have been drawn in accordance with the statutes and laws of the State
> of Florida and, in the event of any disagreement or litigation, the laws of this state
> shall apply.

(Dkt. 19-1 at p. 8; Dkt. 19-3 at pp. 7-8; Dkt. 19-5 at p. 8).

Plaintiffs' Amended Complaint against Defendants asserts causes of action for unpaid wages

under Florida law (Count I); violation of the Fair Labor Standards Act (Count II); harassment under 42 U.S.C. § 1981 (Count III); discrimination under 42 U.S.C. § 1981 (Count IV); retaliation under 42 U.S.C. § 1981 (Count V); and common law fraud (Count VI). (Dkt. 16). New Line and Defendant CEMEX, Inc., who is a nonsignatory to the owner operator and sale agreements, have moved to dismiss Plaintiffs' Amended Complaint and to compel arbitration of all claims pursuant to the arbitration provision in each Plaintiffs' owner operator agreement. (Dkt. 19).

## II.   STANDARD

Arbitration is a matter of contract, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010), and arbitration clauses are to be placed "on equal footing with other contracts." *Solymar Invs., Ltd. v. Banco Santander, S.A.*, 672 F.3d 981, 988 (11th Cir. 2012) (citing *Rent-A-Center*, 561 U.S. at 67). Under the Federal Arbitration Act, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This provision 'reflect[s] both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract.' " *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir. 2014) (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted)); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Importantly, arbitration agreements are to be rigorously enforced according to their terms. *American Express Co. v. Italian Colors Restaurant*, --- U.S. ---, 133 S.Ct. 2304, 2309 (2013).

## III.   DISCUSSION

The parties agree that Florida law governs. (Dkt. 19 at p. 6; Dkt. 23 at p. 4). A party seeking to compel arbitration must establish (1) a valid written agreement to arbitrate exists, (2) an arbitrable

issue exists, and (3) the right to arbitration was not waived. *Raymond James Fin. Servs. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). It is undisputed that Defendants have not waived their right to arbitrate, so the only questions are whether an arbitration agreement exists and whether the agreement covers Plaintiffs' claims.

### A.    A Valid Agreement to Arbitrate Exists

Plaintiffs and New Line Transport executed valid arbitration agreements. New Line Transport offered to each Plaintiff an owner operator agreement which included an arbitration clause. Plaintiffs accepted the offer by signing the agreement, and consideration existed in the form of a "mutual obligation to arbitrate." *Santos v. General Dynamics Aviation Servs. Corp.*, 984 So. 2d 658, 661 (Fla. 4th DCA 2008) (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1376 (11th Cir. 2005) ("[M]utual promises and obligations are sufficient consideration to support a contract.")). Continued employment also serves as sufficient consideration for an arbitration agreement in an employment contract, where the employer was "under no pre-existing duty to continue . . . employment." *Tranchant v. Ritz-Carlton Hotel Co.*, No. 2:10-cv-233-FtM-29DNF, 2011 WL 1230734, at \*4 (M.D. Fla. Mar. 31, 2011).[1]

Plaintiffs assert that the arbitration agreement is unconscionable. (Dkt. 23 at p. 4). Under Section 2 of the FAA, defenses such as fraud, duress, or unconscionability may invalidate a contract. *Rent-A-Center*, 561 U.S. at 68. The Florida Supreme Court adopts a "balancing, or sliding scale, approach" to the unconscionability analysis, which recognizes that "although the concept of

---

[1] Because Defendants were under no pre-existing duty to continue any at-will employment relationship they had with Plaintiffs prior to execution of the owner operator and sale agreements, Plaintiffs' allegation that Defendants used the agreements to effectuate a change in Plaintiffs' employment status from employees to independent contractors is immaterial to the enforceability of the arbitration clause. (Dkt. 23 at pp. 1-2) ("CEMEX told the drivers that they would no longer be CEMEX employees but would become independent drivers for its subsidiary company New Line.")

unconscionability is made up of both a procedural component and a substantive component, it often involves an evaluation in which the two principles are intertwined." *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159-60 (Fla. 2014). Plaintiffs have not met their burden of establishing procedural and substantive unconscionability, both of which "must be present." *Id.* at 1161.

### 1.    Procedural Unconscionability

Courts consider four factors in determining whether a contract is procedurally unconscionable under Florida law:

> "(1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a 'take-it-or-leave-it' basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract."

*Dorward v. Macy's Inc.*, No. 2:10-cv-669-FtM-29DNF, 2011 WL 2893118, at *5 (M.D. Fla. July 20, 2011) (quoting *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010) (citations omitted)). The central question is "whether the complaining party lacked a meaningful choice when entering into the contract." *Basulto*, 141 So. 3d at 1157 n.3.

Defendants acknowledge that they were in the superior bargaining position, they presented the terms of the owner operator and sale agreements to Plaintiffs on a take-it-or-leave-it basis, the terms were non-negotiable, and any pre-existing employment relationship Plaintiffs had with Defendants would have ended had they not signed the agreements. (Dkt. 19 at p. 12) (stating Plaintiffs "could have easily chosen to seek work elsewhere"). While "[t]he fact that a contract is one of adhesion is a strong indicator that the contract is procedurally unconscionable because it suggests an absence of meaningful choice, . . . . the presence of an adhesion contract alone does not require a finding of procedural unconscionability." *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912

So. 2d 34, 40 (Fla. 4th DCA 2005) (internal quotation marks and citations omitted). There must be an aspect of the agreements, other than their take-it-or-leave-it character, that renders them procedurally unconscionable. *See id.*

The manner in which the parties entered into the owner operator and sale agreements does not demonstrate procedural unconscionability. Although CEMEX possessed all of the bargaining power, the agreements were non-negotiable, and Plaintiffs would have been terminated if they had refused to sign, the agreements were an across-the-board change that CEMEX applied to its Hillsborough County drivers.[2] (Dkt. 23 at p. 5). The fact that CEMEX required all of its drivers to sign new agreements to continue their previously at-will employment, albeit under the employment of New Line, does not render the arbitration clause unenforceable. *Tranchant*, 2011 WL 1230734, at *4.

Finally, Plaintiffs have not shown that they lacked the ability or opportunity to understand the arbitration agreement. They assert that "[a]s there was no mention of 1981 or the FLSA, it is natural that the driver would not consider those claims as part of the agreement." (Dkt. 23 at p. 6). This argument conflates the parties' dispute about the scope of the arbitration clause with the question of whether Plaintiff had the ability to understand it. "[U]nder Florida law, a party to a contract has the 'duty to learn and know the contents of a proposed contract before he signs and delivers it [as he] is presumed to know and understand its contents, terms, and conditions.' "

---

[2] In arguing that the arbitration agreements are unconscionable, Plaintiffs assert that the owner operator and sales agreements were sham agreements that purported to sell trucking equipment to Plaintiffs so that Defendants could change their status from employees to independent contractors. (Dkt. 23 at pp. 1-2). According to Plaintiffs, Defendants never actually had any intent to effectuate a sale of the trucking equipment to their drivers. (Dkt. 23 at p. 2). These allegations focus on disputed facts relating to an ultimate issue in this case, rather than the circumstances surrounding the execution of the agreements. Plaintiffs' allegations of fraud, therefore, are not a basis for finding procedural or substantive unconscionability in regards to the arbitration agreement.

*Dorward*, 2011 WL 2893118, at \*6 (quoting *Sabin v. Lowe's of Fla., Inc.*, 404 So. 2d 772, 773 (Fla. 5th DCA 1981) (citation omitted)). Plaintiffs do not claim that they could not or did not understand the agreement to arbitrate or that they were denied an opportunity to review the agreements before signing them.[3] Accordingly, considerating all of the factors, Plaintiffs have not made a persuasive showing of procedural unconscionability.

### 2.   Substantive Unconscionability

Plaintiffs also failed to show substantive unconscionability. Substantive unconscionability will invalidate a contract when the contractual terms are "so outrageously unfair as to shock the judicial conscience." *Premier Real Estate Holdings, LLC v. Butch*, 24 So. 3d 708, 711 (Fla. 4th DCA 2009) (internal quotation marks and citations omitted). "Substantive unconscionability focuses on whether the terms are 'unreasonably favorable' to the other party and 'whether the terms of the contract are so unfair that enforcement should be withheld.' " *Basulto*, 141 So. 3d at 1158 n.4 (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449-50 (D.C. Cir. 1965)). Nothing in the owner operator agreement arbitration provisions are so outrageously unfair as to shock the conscience.

Plaintiffs identify two provisions they contend are substantively unconscionable. First, they point to the provision requiring that "[t]he parties shall share the cost of arbitration equally," which they assert is unconscionable because of the disparate impact the cost of arbitration has on them. (Dkt. 23 at p. 7). This bare claim that the "cost of arbitration would limit or eliminate their ability to redress their rights," is, without more, insufficient to establish that an equal cost-splitting

---

[3] Each Plaintiff also waived a provision in the owner operator agreement that would have allowed them to revoke the agreement within seven days of signing. (Dkt. 19-1 at p. 8; Dkt. 19-3 at p. 8; Dkt. 19-5 at p. 8)

.

provision of an arbitration agreement is substantively unconscionable. (Dkt. 23 at p. 7).

Plaintiffs also point to the provision allowing New Line to "forgo arbitration and pursue litigation." (Dkt. 19-1 at p. 8; Dkt. 19-3 at p. 8; Dkt. 19-5 at p. 8). Plaintiffs interpret this clause as "textbook lack of mutuality of obligation" by "[r]equiring the drivers to proceed only in arbitration while allowing New Line to choose." (Dkt. 23 at p. 7). This provision could, as Plaintiffs contend, be construed as confirming New Line's ability to pursue claims against owner operators through litigation, rather than arbitration, if it chooses to do so. And the provision would certainly be problematic if New Line intended for it to nullify an owner operator's right to compel arbitration in litigation initiated by New Line. Ultimately, the purpose of this provision is unclear. But this provision is inapplicable to this case, since Plaintiffs initiated it. The provision allowing New Line to forgo arbitration, like the cost-splitting provision, does not conclusively demonstrate unfairness. Accordingly, Plaintiffs have not met their burden of establishing that the terms of the arbitration agreement are so unfair or unjust that enforcement should be withheld on grounds of unconscionability.

### B.    *Arbitrable Issues Exist*

All of Plaintiffs' claims against New Line arise from or relate to their contractual relationship, and are therefore within the scope of the arbitration agreement. "In determining whether a dispute arises out of a contract, 'the focus is on whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties.' " *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (quoting *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) (internal quotation marks omitted)). "There is a 'federal policy favoring arbitration of labor disputes.' " *Id.* (quoting *Granite Rock Co. v. International Bhd. of Teamsters*,

7

561 U.S. 287, 299 (2010) (internal quotation marks omitted)). "When parties agree to arbitrate some matters pursuant to an arbitration clause, the 'law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.' " *Id.* (quoting *Granite Rock Co.*, 561 U.S. at 298).

Starting with Plaintiffs' unpaid wage and FLSA claims in Counts I and II, their respective owner operator agreements set forth the work they would perform for New Line, the terms governing compensation, and the arbitration agreement. (Dkt. 19-1 at p. 1; Dkt. 19-3 at p. 1; Dkt. 19-5 at p.1). Because Plaintiffs' right to be paid is dependent upon the employment relationships governed by the owner operator agreements, their unpaid wage and overtime claims fall within the scope of the arbitration clause in those agreements. *See Doe*, 657 F.3d at 1219 ("All five of these claims are based on allegations that are dependent on her status as a seaman employed by the cruise line and the rights she derives from that employment status."); *Robinson v. Anytime Rentals, Inc.*, No. 2:14-cv-528-FtM-38CM, 2015 WL 4393709, at *4 (M.D. Fla. July 15, 2015) ("[W]hen a contract governs the parties' employment relationship, as is the case here, a claim for unpaid wages clearly relates to the underlying Agreement."). The absence of any exclusionary language also militates in favor of resolving any doubts in favor of arbitration. *Martinez*, 744 F.3d at 1246.

This same reasoning applies to Plaintiffs' claims for harassment, discrimination, and retaliation in Counts III through V. The allegations supporting these claims all relate to workplace conditions and New Line's treatment of Plaintiffs as compared to other owner operators. (Dkt. 16 at pp. 6-13). Again, these claims are dependent upon Plaintiffs' employment status and could not be brought in the absence of the employment relationship governed by the owner operator agreements. *See Doe*, 657 F.3d at 1219. Counts III through V, like Counts I and II, therefore arise from the owner

operator agreements and are arbitrable.

Finally, Plaintiffs' claim for fraud in Count VI is significantly intertwined with the terms of the owner operator and sale agreements. They allege that the agreements were a sham, intended to induce them to sign documents that changed their status from employees to independent contractors, and that Defendants never intended to effectuate a sale of trucking equipment, despite accepting payments. (Dkt. 16 at ¶¶ 82-86). Although Plaintiffs bring this claim under a theory of fraud rather than breach of contract, the claim relates to the owner operator and sale agreements because it cannot be resolved without considering New Line's performance of its contractual obligations. *Doe*, 657 F.3d at 1218 (noting that the term " 'related to' marks a boundary by indicating some direct relationship"). Accordingly, the fraud claim is arbitrable.

Plaintiffs' arguments against arbitration are unavailing. The ADR Policy and arbitration agreement in *Patricoff*, relied on by Plaintiffs, is distinguishable. *Patricoff v. Home Team Pest Defense, LLC*, No. 605CV1769ORL31KRS, 2006 WL 890094, at *1 (M.D. Fla. Apr. 3, 2006). Although that agreement referenced specific statutory claims and contemplated "work-related discrimination and harassment claims," including "termination-related 'retaliatory or constructive discharged claims,' and 'employment-related tor claims,'" it did "not specifically mention pre-termination wage-related claims that would fall under the FLSA." Unlike the ADR Policy and arbitration agreement in *Patricoff*, the arbitration provision in the owner operator agreements contains no such limiting language. Nor does the provision indicate an intent to exclude claims for unpaid wages, FLSA violations, section 1981 claims, or common law fraud claims that arise from and relate to the contractual relationship created by the agreement. And this is not a case where the "including but not limited" language is used, followed by references to certain types of claims, which

9

could indicate an intent to limit the scope of the arbitration agreement.[4]

It is clear that Plaintiffs and New Line intended to arbitrate disputes relating to their employment relationship, which was governed by the owner operator and sale agreements. Any doubts as to the scope of arbitration must be resolved in favor of arbitration in this situation. *Martinez*, 744 F.3d at 1246. Defendants have established arbitrable issues, and Plaintiffs demonstrate no basis under the law for excluding their claims from arbitration. Accordingly, Plaintiffs' claims are subject to arbitration.

## C.    *Plaintiffs' Claims Against CEMEX Are Arbitrable*

Although CEMEX is not a signatory to the owner operator agreements, it may compel arbitration of Plaintiffs' claims. Under Florida law, the doctrine of equitable estoppel allows a nonsignatory to an arbitration agreement to compel arbitration if a signatory's claim against it "is inextricably intertwined with his claims against the contract signatory." *Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x 475, 476 & n.3 (11th Cir. 2012) (per curiam) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947-48 (11th Cir. 1999), *abrogated on other grounds, Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). "Otherwise, 'the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.' " *MS Dealer*, 177 F.3d at 947 (quoting *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976)).

The Amended Complaint does not distinguish between CEMEX and New Line, and Plaintiffs

---

[4] Although the owner operator agreement cites "violations of any governmental regulations *cited herein*," as examples of arbitrable disputes, (Dkt. 19-1 at p. 8; Dkt. 19-3 at p. 8; Dkt. 19-5 at p. 8) (emphasis added), which likely prevents New Line from compelling arbitration of regulatory claims not cited in the owner operator agreements, Plaintiffs allege violations of statutes and the common law, not regulations.

assert all causes of action against both Defendants. (Dkt. 16). Indeed, Plaintiffs allege that "Defendants Cemex and New Line were Plaintiffs' joint employers for all times relevant." (Dkt. 16 at ¶ 15). The failure to distinguish between the Defendants evidences Plaintiffs' allegations of "substantially interdependent and concerted misconduct." *MS Dealer*, 177 F.3d at 947; *see also Maldonado v. Mattress Firm, Inc.*, No. 8:13-cv-292-T-33AEP, 2013 WL 2407086, at *4 (M.D. Fla. June 3, 2013) (holding that arbitration of a signatory's claim against a nonsignatory is appropriate where the complaint "fails to distinguish between the three Defendants in this action"). In sum, the arbitration proceedings between Plaintiffs and New Line would be rendered meaningless if Plaintiffs could separately litigate the identical claims against CEMEX. *See MS Dealer*, 177 F.3d at 947. Accordingly, arbitration of Plaintiffs' claims against CEMEX is warranted under Florida law.[5]

## IV.  CONCLUSION

Defendants' Motion to Dismiss Plaintiffs' Amended Complaint and Compel Arbitration is **GRANTED**. This case is **STAYED** pending arbitration. The Clerk is directed to **ADMINISTRATIVELY CLOSE** the file.

**DONE AND ORDERED** this ___9th___ day of March, 2017.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record

---

[5] Plaintiffs argue that CEMEX has unclean hands. (Dkt. 23 at p. 11) (citing *Hensel v. Aurilio*, 417 So. 2d 1035, 1038 (Fla. 4th DCA 1982)). Yet, there is no difference between their unclean hands argument and the fraud claim they allege against both Defendants. (Dkt. 16). *See Maldonado*, 2013 WL 2407086, at *2 ("[T]he Court declines to sanction two separate proceedings on Maldonado's fundamentally related claims against the Defendants, as these claims will likely involve substantially overlapping issues of fact.").

11